Chicago Mr. Krislav. Good morning. Judge Easterbrook, Judge Sykes, Judge Hamilton. I'm Clint Krislav on behalf of the city retirees, plaintiffs, many of whom are in the room. Our complaint to enforce their right to lifetime protection under the city's fixed rate subsidized health care plan was dismissed by the district court in the court's erroneous prediction that the Illinois Supreme Court would hold that retiree health care benefits were not protected benefits of participation in an Illinois pension fund. And indeed, after the district judge rendered his decision dismissing the complaint foundationally on that basis for all claims, the Illinois Supreme Court came out the other way, ruled that health care benefits to retirees who are participants. Obviously, the Supreme Court of Illinois doesn't think that's the end of the possible dispute. So I understand that it is agreed to hear to review Matthews against Chicago Transit Authority. Yes. What's the relation between the arguments in this case and the arguments pending in the state Supreme Court in Matthews? Matthews has, it's a little quizzical as to which order they want things to go, it appears, because Marconi, which was also decided around the same time, held that in the trial court Marconi had ruled that the health care benefits were protected by the Constitution and you need not go further. And that case, while Matthews, I believe, goes up on how the order is to be done, because I believe that they found that the contract base, I think the judge found that the benefits were not protected and so that case is taken up. But the judge's decision below is not entirely certain and the appellate court is not clear so much. They seem to accept that Marconi is the guidepost. Marconi says that first you should take- it doesn't think it's self-bound by decisions of state intermediate appellate courts, which is Marconi. True. I'm just asking what the relation between what's going on in Matthews and what is going on here is. This matters, at least to me, because the first question is what- should we try to decide this case at all or should we wait for Matthews or conceivably certify this case to the Supreme Court of Illinois? This is a state law question and the Supreme Court of Illinois has the final say. It seems odd for this case to be here at all. I understand why it's jurisdictionally here. So that's my first problem, is understanding the relation between the legal issues here and the issues in Matthews. And we join you in part of that, which is we said that we asked that the court refer the matter over to the Illinois Supreme Court. There is the issue that really should be referred to the Illinois Supreme Court of whether the legislature can create a benefit of participation in the pension system, which is not a protected- You're not addressing my question, which is the relation between the issues in this case and the issues in Matthews. I know what the issues are in this case. Could you tell me what the issues are in Matthews? In Matthews, it is the interplay of the contract claim and the constitutional claim. That's not an issue. Maybe what we need is supplemental memos so that people can sit down and think this through and tell us concretely what the issues are in Matthews. We're glad to do that, Your Honor, but Matthews clearly follows Marconi as its guide. But the Supreme Court of Illinois is not bound by decisions of intermediate appellate courts. That's why I want to know what the issues are before the Supreme Court of Illinois in Matthews. And the question will not be are we bound by the intermediate appellate decision in Marconi. Agreed, but the way that the court grants review is they grant review of the whole case. They declined Marconi and they took Matthews. I think we're spinning wheels. We will look forward to the party's presentation of this in supplemental memos. We'll do that, Your Honor. Mr. Krisloff, could I ask you to clarify, for me at least, the basis of the entitlement here? Are you relying on the 83 and 85 statutory amendments, on the settlements, or what exactly? We rely on the benefits as they were legally provided on August 22, 1989, for the people who were participants on that date, which is most of the class. Those people all had a fixed rate subsidized plan for police and fire, their entitlement, for having worked their entire career in the service of the city for police and fire, their premium was paid for 100% for the annuitant by the fund, and the annuitant paid for spouse and dependent coverage. For municipal and laborers, it was $25 subsidy by the fund. And was that simply because that's the amount being paid at that time? Was it because of the statutory claims? Was it because of oral promises made? Which of those? All. One of which was where it started was an agreement between the Byrne administration and the union representatives, although it wasn't in a collective bargaining agreement, but it was done as an agreement as an alternative to a pay hike. And what was done was, they said, we will provide a fixed rate plan, and there was a statute that was enacted at that time to pay that entire amount. And so that was the deal. It was a fixed rate plan where insurance was provided by the city, or it could be viewed as a contract that the pension trustees contracted with the city, and the city, as Judge Green found, the city had agreed to act as an insurer for the retirees, and that the pension fund paid their premium. Could the city have entered into agreement that said, we want to experiment with our coverage, and we're going to grant a benefit for this year to retirees, and we're going to re-evaluate next year whether we're going to continue with that? We looked at this in trying to address our MECA's brief in the Conerva, and the issue that we said, we identified for this group was, where you define the people by being participants in the pension system. Once you establish that benefit, that's a permanent benefit. So the short-term experiment would not be permitted under the Constitution? If it was done under a city employment provision. With retirees. If it's done with retirees who are participants in the system, I mean the participants in the retirement system is the key to the protection. So yes, it would be protected. I'm now unclear what your basic argument is in light of that answer. You have said, and you said in your brief, that this case is about the people who were retired in 1989, and that sounds like a conclusion that if you adopt a time-limited system, if you expressly say, this set of rules holds for two years, nothing happens after that two years, we renegotiate, that that would not be vested under the 1970 Constitution. Have I understood you correctly? No, Your Honor. Because then you would have answered Judge Hamilton's question otherwise. Right. The basis for protection is that you were a participant in the system on a certain date, and that means your hire date. Because when you're hired, you start contributing to the system, and that's the theory of the constitutional protection. Once you are a participant, you keep the best of the benefits that occurred during your participation in the system. The only matter what the language is, the matter what the language of the award or grant is, that's one reason why I was asking about Matthews, because I thought that one of the questions in Matthews is what's the consequence under the 1970 Constitution of something that is expressly time-limited by contract or statute? I believe in Matthews the expressly time-limited plays into the collective bargaining agreement. It's complicated. Yes, that's fairly often. A collective bargaining agreement will be struck for a year or two years or four years, and the agreement may say, and after that all bets are off, we renegotiate. Or it may say, and these are lifetime benefits. My second related to question is, what's the relation between this case and the M&G Polymers case pending in the Supreme Court of the United States? That one, M&G Polymers deals with on the federal ERISA basis, what is the presumption if you provide something to retirees, is there is the rule, and I forget which circuit is which, but one of the rules is there is a presumption. Every circuit is different, and this circuit, we have an en banc that comes out three different ways, so we don't have any rule at all. Fine with me. But it doesn't deal this, the federal standard, whatever that may be, is inapplicable here. What we're dealing with is. Well, that's something you say, maybe the Supreme Court of Illinois will say in Matthews, that unless there is a promise of the sort that one can reasonably rely on, see M&G Polymers, it's not protected by the 1970 Constitution. Well, if we predict that. So one, I mentioned the possibility of waiting for certifying to the Supreme Court of Illinois. Second question that we really need to consider is whether we should also wait for M&G Polymers. M&G Polymers is inapplicable here because that will govern ERISA in the federal circuit, excuse me, in the federal sphere. And you think there's no way the Supreme Court of Illinois will be at all interested in what the Supreme Court of the United States has to say? You know, somebody could have said it during Canerva, let's wait, there's a case before the Supreme Court on the federal ERISA. This is the Illinois Constitution. No, I don't think you're listening to my questions. I am, Your Honor, but I believe that. Then let's just say your answers are not responsive to my questions. I'm trying to respond to you. Mr. Kristoloff, I'd like to ask you about your federal claims. Yes. Which I'm curious as to how much they really add here. Under the 14th Amendment, you call it a deprivation of property. Yes. Of course, the 14th Amendment doesn't prohibit all deprivations of property. Right. So could you explain your 14th Amendment theory to me? The 14th Amendment rests on the fact that these retirees have a property right in their retirement benefits. I understand that. So is it a takings claim? Is it a procedural due process claim? Is it something else? It's a takings effect. Okay. Then you've got a ripeness problem. Yeah. Well, it's going to come January. Well, no, we don't have a ripeness problem. The Supreme Court has said that takings claims must go to state court because there is no taking without a denial of compensation. They don't belong in federal court. We filed this in state court. Yes, I know, but we still have a ripeness problem. On that claim. We may have a ripeness problem on that claim, but if so, that hasn't really been addressed in any of the briefs. Right. But I want to try to understand. We understand that the district court based its decision on one foundation that's not there anymore. Right. Let me ask you about your Federal Contracts Clause claim. Yes. Can you direct us to cases where the predicate for the federal claim was not a contract but a state constitutional provision? Well, this is a contract. This is a breach of contract claim. Judge Green, in 1988, these are the same claims that were brought in 1988, raised, litigated, tried, and then suspended as a matter of fact. Settled. Pardon? Settled. Settled on an interim basis. Each of the two settlements, which explicitly created, preserved the right to basically bring the case to a decision eventually. Each of them. In fact, the first time we tried to revive the case, the circuit judge said, no, that's all the permanents you get. And the appellate court said, permanent means permanent. What this is is trying to get the decision that they in court, that the retirees had in 1988. The case was fully tried and on a contract basis. Judge Holderman said he didn't have to consider Judge Green's decision. But Judge Green, in 1988, on motions to dismiss, upheld the contract claim, upheld the term of employment claim, upheld the equitable estoppel claim. All the judge did was allow those to proceed. Pardon? The judge allowed those claims to proceed. In other words, declined to dismiss them. That's not a final order. That's not a merit. Right, right. No, I understand that. But in dealing with motions to dismiss on these claims for these people, he denied the motions to dismiss, and the case proceeded to a three-week trial. Right, and we have a settlement that was then memorialized by statute and then renewed under slightly different terms for definite periods of time and has now expired. Each of the settlements explicitly preserved the retirees' rights to go back and reassert the rights as they existed in 1988. That was the key. That's why when you. . . Right, but there's not a contract. Yes, there is. Underlying that. Yes, there is. No. Underlying the right to restore or underlying the right to health care? Either. I mean, you've pointed to some oral agreements, handshake agreements with the Byrne administration, apparently, which are not enforceable. And you've got, and you vaguely refer to statutes and settlement agreements, but you haven't really fleshed that out very clearly. I'll be glad to articulate. And pre-retirement seminars repeatedly conducted by the city telling. . . That's an estoppel argument. That's not a contract-based argument. No, no, when they say this is a term of your employment, this is what you have gotten, this is what you get. Are the people conducting these seminars legally entitled to find the city of Chicago? Well, they are the representatives expressing to the retirees. . . Just answer my question rather than say something that you wish I had asked. Are they legally entitled to find the city of Chicago? That's essential for a contract claim. The people who speak at the seminars, I would agree, are not officers of the city. They have neither actual nor apparent authority to establish city policy. To establish city policy, no. But they are the people. . . It's not like the city doesn't know that it's being conducted. The city is organizing these for the people, for the people who are facing retirement, for people who are police officers serving in the line of duty. The city official comes and says, this is the deal that you get. They can't say, oh, you know, I'm not the guy who authorizes this. You just have to. . . Well, they can, actually. It's one of the basic rules of government that the obligation of public money requires the consent of the legislature and usually the signature of the executive. But the consent they have. . . And the obligation of public money can't be done by line officers conducting retirement seminars. But the explicit approval. . . Now, you can disagree with that all you want, but arguing with the court isn't going to help. I'm not arguing with you. Yes, you are. You're even arguing with the court about whether you're arguing with the court. Fair enough. You might want to go back, then, to your presentation. The action by the city officials to appropriate money for annuitant health care is action by the city officials, which shows that there is an agreement to provide this. For a specific duration of time, a limited duration of time. It's not like the city council can appropriate for an illegal reason. The city council appropriated year in, year out for this. Right, and the agreements expired on their expiration date, and that's the situation we have before us. The appropriation. That appropriation may have expired, but that is action. Well, not just the appropriation. The settlement agreements had expiration dates. The settlement agreements expiration dates. Each of the settlement agreements explicitly preserved the retiree's right to reassert those claims as they existed. The right to maintain a claim is not a contract for perpetual lifetime health care benefits. At this point, the pleadings, Your Honor, in this point of the pleadings, we can show more. There could be additional discovery to show that inside the cities, either inside the cities, whatever records there will show something to document that there was an agreement, and on the other hand, at the very least, we have the right to show that by the evidence that was presented at the 1988 trial, all of which was raised, litigated, and certainly cross-examined, that that would be a sufficient basis to support contract or estoppel. Either way, they still should get their benefits. They had their right to a day in court, and they should not be precluded from that now. Mr. Christoff, do you read KINERVA, how do you read KINERVA as applying to people who have not yet retired? KINERVA really doesn't. KINERVA doesn't. KINERVA addresses just the issue of whether health care benefits are protected or in the issue of whether it's limited to annuities, and they said no. Boudel is really the case that deals with people who haven't retired. May I finish, please, Sonny? Boudel says that your benefits are determined based on your participation, based on the benefits during your participation rather than at your retirement date. That's the one that deals with people who haven't retired, because people who haven't retired, and there are some still, because municipal and laborers tend to work longer. There are some, and none of them qualify for Medicare, so they have the additional problem. But I think I've answered your question. It's Boudel that deals with when it's determined. Thank you, Mr. Christoff. Ms. Sullivan. Thank you, Your Honor. May it please the Court. Plaintiffs press five legal theories in support of one claim, that the city is required to provide retirees with health care coverage for life. None of their theories is sound, and the dismissal of the complaint should be affirmed. I'd like to start just very briefly by addressing Judge Easterbrook's questions on Matthews and M&G polymers, although we are, of course, pleased to submit a supplemental brief if the Court would like it. The Matthews case involves claims against the CTA for promissory estoppel and claims against the funds based on collective bargaining agreements. Neither of those bases is asserted as a ground for pension clause or even contractual rights in this case. So our position would be that Matthews is inapplicable. Well, one, I understood Mr. Christoff to be arguing that once somebody comes into a system that has a particular benefit, they get that for life no matter what the collective bargaining agreement says, even if it's expressly time-limited. Do you think Matthews is likely to say anything about that kind of argument? I believe Matthews may address that issue in the context of collective bargaining agreements, which are at issue in Matthews and are not at issue here. There is no collective bargaining agreement between the city and its retirees or between the city and its employees providing for health care coverage. As I understand the plaintiff's claims, they do, at least by the reply brief, make the bold claim that Your Honor describes, which is that once a benefit is provided at all, even on a time-limited basis, it must be provided for lifetime by virtue of the pension clause. But that claim is based solely on the statutes. But that sort of claim is before the State Supreme Court right now in the context of a time-limited collective bargaining agreement? There are collective bargaining agreements and then, as I say, a claim for promissory estoppel against the CTA itself in Matthews. Those claims are not in this case. No, I understand, but is one of the arguments being made in the case before the State Supreme Court that NERVA stands for the proposition that once you're a member of the bargaining unit, but the employment group that is within the pension fund, you get benefits for life regardless of what their terms are according to the collective bargaining agreement? I don't know that it's possible to say definitively what's going to be briefed in Matthews. The briefs are just being written now. But is that within the scope of the grant? The issues the appellate court decided did concern later collective bargaining agreements that altered rights that were claimed under earlier collective bargaining agreements. But my point is that there is no such claim here. The plaintiffs rely solely on statutes. They don't take their claims back to anything, any date before 1983. They mention that the city allowed retirees to participate in health care before 1983, but they don't base any claim on that. And when the court is construing statutes, the way to determine what a statute provides is very clear under Illinois law as it is under federal law. You look to what the statute says. You heed the language of the statute because the legislature is allowed to put conditions on to create the benefit that it wishes to create, and that when a court ignores words in a statute like until 1997 or will terminate in 2013, the court exceeds its powers and fails to heed to the separation of powers that divide the legislature and the courts. And the pension clause of the Illinois Constitution, powerful though it is, is simply not a basis to allow a court, whether state or federal, to ignore the actual language that is enacted. And so for that reason, we do say that every statute that obligated the city to make any obligation, excuse me, The statutes that imposed any obligation on the city with regard to retiree health care are all time limited. The first came following the 1989 statute, excuse me, settlement. The 1983 and 1985 statutes that the plaintiffs referred to did not impose an obligation on the city. They were directed solely to the funds, which are separate units of local government, separate legal entities, excuse me. Could I ask you to, at some point, help explain to me what you think the consequences of that are? But I didn't want to interrupt. I'm sorry, Your Honor, the consequences of? Well, I'm tending to think of the city and the funds together here, and your argument is separating them, and I'm not sure to what end. We separate them because, among other reasons, the 1983 and 1985 statutes that first imposed, the first statutory obligations for health care coverage by the city, by the city pension funds, came in those statutes, and those statutes are very clear. They direct the funds to allocate a portion of the tax levy that it receives for its purposes to the payment of premiums to contract for group health insurance or otherwise obtain group health care insurance, and it was determined that that would be by allowing the annuitants to participate in the city's plan. The city is self-insured, so those premiums were paid to the city. But those are the obligations of the funds. They are separate legal entities. We cite the cases for that in our brief, and there is no basis under those statutes to impose any obligations on the city. By contrast, the first statutes that did impose any obligations on the city are all time-limited. The first and all the others are all time-limited. They expired in 97, in 2002, 2003, 2013, and there is currently no statute in effect directing any aspect of retiree health care obligations on the part of the city. And for that reason, we say that there is nothing for the pension clause to protect. The city couldn't withdraw pension benefits. It did not, Your Honor. I know you did not, but could not under KONERVA, right? The city, the pension rights, annuity checks are cut every month by the pension funds and paid to the annuitants. We're talking here only. Right, but are the terms of the retirement plan time-limited? Do they change periodically? The monthly annuity payments, you know, kind of in lieu of salary, deferred compensation, retirement benefits, a pension check, those are not time-limited and have never been. This case does not concern those payments. This case concerns the separate payments for health care, which to be sure. My question gets at, now that the state Supreme Court has construed the pension clause to protect health benefits as well as annuities, pensions, there are distinctions between those kinds of benefits that affect how that holding is applied. We're not relying. Health benefits aren't static in the way that pension benefits are once you're in the system, and that's part of the problem with the holding, but that's beside the point for our purposes. And beside the point for the city's purposes as well. We accept the holding of KONERVA, of course. We urge the court. Nothing that is inconsistent with KONERVA for the reason that the statute at issue in KONERVA obligated the state to contribute 5% a year toward health care premiums for up to 20 years that an employee worked for the state. There was no time limit of any kind. So the statute is just markedly different from the statutes at issue here. When the legislature creates a benefit that did not exist before, and the fact that once created it would have constitutional protection doesn't matter. It's still created by statute. It's not created by the Constitution itself. So the 1989 statute is the first statute obligating the city in any way to contribute toward health care. That statute expired by its own terms, as did every extension of that obligation. And when the legislature conditions the benefit at the outset, it is time limited. It is different from KONERVA because the statutes at issue here simply lapsed by their own terms. The benefit was given for the entire time the statute was in effect. Plaintiffs make no claim that we ever failed to heed to the statutes while they were in effect. Their claim instead is that despite the explicit termination date, the sunset date, the expiration provision in those statutes, the city is nonetheless obligated by virtue of the pension clause to continue that time-limited benefit for the life of the retirees. And that position makes no sense, and there is no support for it under Illinois law, including the pension clause. We cite cases in our brief that clearly hold, as a matter of Illinois law, and of course federal law is the same, that the legislature is free to condition a benefit that it is creating. Is it your position that within the time of the settlement agreement, in other words, these were periodically renewed, so within the five-year renewal period or the ten-year renewal period, whatever it was, that the benefits can't be diminished under the KINERVA interpretation of the pension clause? That probably is true, although my guess is certainly the question never arose because the city never attempted to do that. If that claim were ever litigated, of course the court should start with a contract. The settlement was a contract. Marconi tells us that contract claims should be resolved before constitutional claims. That's, you know, the doctrine of constitutional avoidance is the same under state law as it is under federal law. And so my guess is that a pension clause issue would simply never have been presented because the city did obligate itself by written contract, signed, in writing, authorized by someone, you know, able to put... But there are various doctrines that allow escape from that for municipalities in emergencies and exigent circumstances and so forth. Well, but as I say, the statutes and the settlement agreements have all expired by their terms and there is no claim here that we didn't provide every bit of what was required pursuant to those during the time that they were in effect. The claim here instead is the extraordinary claim that despite the explicit time limits, there is something magical about the pension clause that transforms those time-limited benefits into a benefit for life. And as I say, we don't see any support for that under Illinois law or common sense. Ms. Solomon, we're here because you chose to remove the case to federal court. If I could go back to an earlier topic, I'm trying to figure out if there's any good reason why a federal court should decide these state law issues or whether we ought to figure out a way to invite the state courts to decide them. And I invite your thoughts as well as Mr. Crislaw's on both whether we should do that and if so, how. Well, of course, there is jurisdiction over the state law claims. They're part of the same case or controversy, which is just the beginning of the issue, not the end, and I don't suggest it as the end of the inquiry. But there is really, as I say, one claim in this case, and it's a claim to lifetime health care coverage. Both the state claims and the federal claims are all pressed in support of that single claim. The plaintiffs have never objected to the exercise of jurisdiction by the federal court, not even if the federal claims washed out. And again, the court will be mindful of its own exercise of jurisdiction and will decide this for itself. But, you know, for example, interests of judicial economy. If the court concludes that these issues are best resolved by state court, I can think of two routes. One is just waiting for Matthews in the hope that Matthews will say something that's despotic. The second is certifying to the Supreme Court of Illinois. Is there any other route? The court could decide all of the issues, as I say. If the court decides that it does not want to decide, thinks this is best resolved by a state court, we can wait in the hope that Matthews will resolve it, or we can certify. My question is, is there a third route for the federal court not to decide the state law issues? The third route not to decide, although we do urge the court to decide, of course, but the third route not to decide is to affirm on the federal claims and order the state claims remanded to state court. But we would, for several reasons, we would resist any of those three dispositions. We would resist waiting for Matthews because, as I indicated, the issues are different. I didn't quite finish that discussion. The issues in MG Polymers are also different because it concerns only ERISA claims based on ERISA plans, and there is no claim like that here in this case. And there's really no reason to think that the Illinois Supreme Court is going to, in our judgment, no reason to think the Illinois Supreme Court is going to derive its approach to interpreting either the pension clause or the very, very clear statutes that are at issue here based on whatever principles of construction govern a plan, whether it's vesting or other notions that are really limited to the ERISA or a retirement plan context. So we would resist waiting for Matthews because, in the end, we do believe it would be irrelevant. Well, both federal law claims have embedded state law contract and property right issues. It seems to me we can't decide the federal claims exclusive of the state law claims because they all depend upon the existence of a contract or property right. They do, but we do think that there is no basis to avoid deciding the federal claims. I mean, those can't be remanded, for example, or certified. And on those, they do depend on the idea that a statute providing a time-limited benefit somehow does not provide a time-limited benefit. Somehow it provides a benefit for someone's life. And we think that notion is so unfounded that the federal claims can simply be dismissed on that basis. So I think I've covered waiting for Matthews as far as certifying issues here to the Illinois Supreme Court. That court's Rule 20 provides for certification of issues where there are no governing legal precedents. And we submit that the governing legal principles for how to construe an unambiguous statute, even the plaintiffs don't claim that the statutes are ambiguous. They ignore the language of them, the language that says terminate in 2013. But they don't claim that the statutes are ambiguous. And the rule under Illinois law for construing statutes is to discern the intent of the legislature. The language is the best guide to legislative intent, and every word must be given effect. These are familiar principles under both state and federal law. And to certify the question how to read these statutes we believe would not fit within the terms of Rule 20 and would not be necessary under that. As far as remanding the state law claims, both sides are aware of an urgency to get this case decided. There are consequences to both sides in delay in this case. The issues have been fully litigated. They have been fully briefed. This is a very old case. It does go back, as Mr. Krisloff indicated, nearly 30 years. It's not a lone dispositive. But the International College of Surgeons case itself recognizes that at all stages of the litigation, the court should ask itself are there reasons to decide the state law claims. And because of the consequences to both sides, because there's been a waiver of any assertion that the state law claims should be remanded, even if the federal claims are dismissed, this court has decided the issue of supplemental jurisdiction based on waiver in the Grochi case, among others. Grochi against Eli Lilly. And, again, we do understand this panel will assess those issues for itself. But in light of the need to have a prompt resolution of this issue, there are people here, people deeply care about this, and delay would not be good for either side. I hear you, both in terms of individual plaintiffs and the city's fiscal planning. I also see a case that comes to us on the pleadings without any development or any decision by the district court in any event on the grounds that you're urging in defense of the dismissal. Well, of course, that's a separate issue from remand to state court. That's an issue of remand to the district court. But we don't think that's necessary either. The issues are all issues of law. Plaintiff's reply brief is extremely clear on this point. As they read our position, it is a disagreement about the legal import of their complaint. They talk about a lot of facts, but they don't actually matter. There is not a single material fact in dispute. That's on page 7 of their reply brief. And because these are legal issues, they are just subject to de novo review in any event. We don't see what would be served by having the district court examine them in the first instance. I'm out of time. Thank you very much, Ms. Sullivan. Thanks to both counsel. The case is taken under advisement. No. Time for rebuttal has expired. The court directs the parties to file supplemental memoranda within seven days. Addressing the relation between this case and Matthews and M&G Polymers. The bearing of M&G Polymers may be different on the state law issues and on the federal contract claim. So that should be addressed distinctly. And the parties may, if they wish, in these memos, take any position on whether the case should be certified, whether we should wait, or whether we should direct a remand of the state law claims to state court. Due in seven days. Thank you very much. And the case will be taken under advisement, I guess technically, when those memos are filed.